IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PRENDA LAW and ALPHA LAW GROUP, ) ) ) Plaintiffs, ) ) v. ) ) PAUL GODFREAD, ALAN COOPER, and ) JOHN DOES 1-10, ) ) Defendants. ) | No. 13-cv-00207 Judge: Stephen C. Williams |

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
PURUSANT TO MINNESOTA'S ANTI-SLAPP STATUTE[1]**

Stripped of Defendants' *ad hominem* attacks against Plaintiffs and their failed efforts to bootstrap matters involving other entities and other individuals from proceedings in other states and other courts, the Defendants' Motion fails for several, independent reasons. Defendants' attacks, misdirection and conspiracy theories allegedly involving non-parties cannot overcome the fact that they have failed to state a valid legal basis to dismiss claims alleged in *this* lawsuit.

While Defendants' style of argument is common on the internet weblogs that gave rise to this defamation action, it does little to allow a Federal Court to apply governing law to fact. And on that score, the Defendants' Motion fails for three, independent reasons. *First,* Defendants have based it upon the Minnesota anti-SLAPP statute, Minn. Stat. § 554.01-.05 because, they admit, they believe it is more favorable to them than the applicable Illinois anti-SLAPP. But despite their lengthy and misleading analysis of Illinois choice-of-law provisions, there is no allegation in the Complaint, or evidence that they present, that the defamatory statements that

---

[1] Plaintiff on April 10, 2013 filed a motion to remand this case to St. Clair County, Illinois because this Court does not have subject matter jurisdiction. Plaintiff expressly maintains and reserves any and all challenges to the Court's continued handling of this case because it does not have jurisdiction over the case.

they made occurred within the boundaries of the State of Minnesota. As such, there is no valid basis to apply the Minnesota anti-SLAPP statute.

*Second,* Defendants have failed to show that there is any protected speech. They falsely claim that the defamation at issue arises from a complaint filed in Minnesota. In reality, as the Complaint alleges, it arises because Defendants are among a group of mostly-anonymous weblog commentators who have admitted in certain of their posts that their specific intent in making the statement was to cause reputational, financial and other harm to Plaintiffs. The statements set forth in (and incorporated into) the Complaint are, by Defendants' own admissions, attempts to cause damage to Plaintiffs, not to procure any favorable governmental action, and even a cursory review of the extensive number of statements incorporated into the Complaint shows that they are far beyond the scope of "lawful … speech that is genuinely aimed in whole or in part at procuring government activity." The speech "constitutes a tort" that is outside the protections in the Minnesota anti-SLAPP statute. Minn. Stat. § 554.03. *Third,* Defendants ignore the recent trend among Federal courts holding that an anti-SLAPP statute is may be applied in a federal proceeding. For the reasons set forth herein, the Court should deny the Motion.

## FACTUAL ALLEGATIONS

Plaintiffs filed this action for defamation and other claims against the Defendants in February 2013 in the Circuit Court of St. Clair County. Defendants first filed a notice of removal to this Court on or about March 1, 2013. (ECF No. 1.) This Court lacks jurisdiction, however, because one of the two Plaintiffs, Alpha Law Group, is a citizen of the same state as at least two of the Defendants.

One of the two named Defendants, Alan Cooper, in January 2013 filed a complaint against several entities, including John Steele and Prenda Law, alleging among other things the

misuse of Defendant's name; that action is pending in State court in Hennepin County, Minnesota (the "Minnesota Suit"). Plaintiff is not a party to Cooper's action. There are ten (10) defendants in this matter are unknown to Plaintiffs.

## ARGUMENT

The sole legal basis for Defendants' Motion is the Minnesota anti-SLAPP statute. Defendants acknowledge that their intention in seeking to invoke that rather than the Illinois anti-SLAPP statute is their view that the Minnesota statute is more favorable to them than to Illinois law. But their analysis fails for several reasons.

### I. NO AUTHORITY THAT THE MINNESOTA ANTI-SLAPP STATUTE HAS ANY APPLICATION HERE.

Defendants expound at length on Illinois choice-of-law provisions, but cannot cite authority holding that a defendant can avail it of an anti-SLAPP statute for statements unless they were made within the boundaries of the state. There is no such evidence here. Indeed, Defendants claim that statements at issue occurred in Minnesota are statement made in their complaint pending in that state. However, as the Complaint makes clear, statements in the Minnesota complaint are *not* among those for which Plaintiffs seek damages.

#### A. Illinois Defamation Law Governs Plaintiff's Claims.

While Defendants cite heavily to *Kamelgard v. Macura*, they misapply that decision. 585 F.3d 334, 340 (7th Cir. 2009). The Court in *Kamelgard* cited the general rule that where, as here, "the defamatory statement is communicated in many different states, it makes sense to apply the law of the plaintiff's domicile, and that is the usual result in Illinois." *Id.* at 340; citing *Velle Transcendental Research Ass'n, Inc. v. Esquire, Inc.*, 41 Ill.App.3d 799, 354 N.E.2d 622, 625 (1976); *Snead v. Forbes, Inc.*, 2 Ill.App.3d 22, 275 N.E.2d 746, 748-49 (1971); *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 915-16 (7th Cir.1994) (Illinois law).

The reason the Plaintiffs state of residence is most significant is because, as the Seventh Circuit explained, "[t]hat is where the principal injury from a defamation will occur because it is where the victim works and lives and where (in the usual case) most of the people-family, friends, business associates, etc. - are found with whom he has personal or commercial transactions, which might be impaired by defamation." *Id.* (citations omitted). "And it is where, according to Learned Hand, he feels the sting of defamation. Hand said that 'the gravamen of the wrong in defamation is not so much the injury to reputation, measured by the opinions of others, as the feelings, that is, the repulsion or the light esteem, which those opinions engender.'" *Id.* (citation omitted). *Burton v. Crowell Publishing Co.*, 82 F.2d 154, 156 (2d Cir.1936) (L.Hand, J.). The Seventh Circuit held that "'the state of most significant relationship will usually be the state where the person was domiciled at the time,' [and] adds-'if the matter complained of was published in that state.'" *Id., citing* Restatement, of Conflicts, § 150(2). The Seventh Circuit concluded that the law of the state where the plaintiff had his business, and was "likely to suffer tangible harm from defamation that impugns his professional integrity and competence, even if the defamation is not published there, has a substantial interest in protecting him from defamation; and it is therefore [that state's laws] that should apply." *Id.*   Illinois law thus governs Plaintiffs' claims.

### B.  Publication Occurred in Illinois.

Defendants acknowledge that Plaintiff ---- the only one they acknowledge exists because they believe doing so preserves jurisdiction in this Court --- is an Illinois resident. And that Plaintiff clearly alleged that the Defendants published defamatory statements on the Internet, and published those statements "to anyone in the world with an Internet connection." (Compl. at ¶¶ 2, 101, 107, 113, 119.) Contrary to Defendants' argument, and under the Seventh Circuit precedent in *Kamelgard* , Illinois law governs Plaintiffs' claims because it is both the state of Plaintiff's domicile, and the defamatory statements were published "to anyone in the world" (*see, e.g.,* Compl. at ¶2) which obviously includes Illinois.

Defendants attempt to skate by this conclusion by stating that the "Complaint contains no factual allegation that God read or Cooper made any defamatory statement outside of a complaint Godfread filed in Minnesota District Court on Cooper's behalf." (Mot. at p. 11.) That claim is demonstrably false because, in reality, Plaintiff alleged that Defendants' false and defamatory statements "appeared in substantially the same form in Internet postings that are libelous to Plaintiff … long before the Complaint was a matter of public record." (Compl. at ¶6.) Thus, Plaintiffs alleged that Defendants made *and published everywhere*, which includes Illinois, false and defamatory statements regarding Plaintiffs. Defendants' claim that Plaintiffs "alleges that a tort was committed by Godfread and Cooper in Minnesota" (Mot. at p. 11) is also false. Plaintiffs did not allege conduct in Minnesota. Plaintiffs, as set forth above, alleged that Defendants published defamatory statements everywhere where a person can access the Internet, which obviously includes Illinois.

**C. No Valid Basis To Apply Minnesota's Anti-SLAPP Statute.**

Defendants also fail to show why the Court should apply Minnesota's anti-SLAPP statute, other than to indicate that the two named Defendants are Minnesota residents. The case law that it cites hold that the state of residence of the speaker is one relevant factor, but more important is whether the speaker made statements within the state whose anti-SLAPP laws it seeks to invoke. The cases Defendants cite applied the law of a state where the speech at issue *originated within that state.* Here, Defendants made false and defamatory statements in every state where there was access to a weblog upon which they published their statements.

While Defendants rely upon *Chi v. Loyola University Medical Center*, 787 F.Supp.2d 797, 803 (N.D. Ill. 2011), that and other cited decisions focus on where the defamatory statements were made. The court in *Chi* held that "A district court sitting in diversity applies the choice-of-law rules of the state in which the court sits." *Id.* "In Illinois, courts use the `most

significant contacts' test in resolving conflicts of law." *Id.* (citing *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). In the tort context, "'the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties.'" *Id.,* citing *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006) (quoting *Esser v. McIntyre*, 169 Ill. 2d 292, 298, 661 N.E.2d 1138, 1141 (1996)). The court held that the following factors are considered in deciding which state has the more significant relationship to this issue: (1) the place of the injury; (2) the place where the injury-causing conduct occurred; (3) the parties' domiciles; and (4) the place where the relationship between the parties is centered. *Id.*

In *Chi,* a defendant wrote the allegedly defamatory statement in Illinois and sent a physical copy of it to Arizona, where Plaintiff was defamed when third parties read it. The court held that while the place of injury is a determinant of the law governing a tort claim, it is "less important" for anti-SLAPP matters. But while it also held that a key inquiry is "the place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis," and limited such situations to where "the speech initiated within the state's borders." *Id.* The Court held that the Illinois anti-SLAPP statute applied because the defendants were Illinois residents and *the speech originated within the state's borders. Id.* Similarly, in *Doctor's Data, Inc. v. Barrett*, No. 10-cv-03795, 2011 U.S. Dist. LEXIS 134921 (N.D. Ill. Nov. 22, 2011), the Court denied the defendant's request to apply Illinois' Anti-SLAPP statute to a motion to dismiss defamation claims on the ground that, among other things, the defendant did not "argue that the speech originated in Illinois, which would make the second factor (where the injury-causing conduct occurred) weigh in favor of applying Illinois law to" the anti-SLAPP defense. *Barrett* at *7.

Here, the Defendants' statements were made wherever there was a computer with access to the weblogs upon which the false and defamatory statements appeared. Defendants' argument that Plaintiffs "allege[] that a tort was committed… in Minnesota" (Mot. at p. 11) is incorrect.

Defendants have not established any basis to suggest that the Minnesota anti-SLAPP statute has any relevance in connection with this case, and the Court should deny the Motion.

## II. STATEMENTS OF DEFENDANTS ARE NOT "LAWFUL SPEECH" PROTETED UNDER ANTI-SLAPP STATUTES.

Irrespective of what statute Defendants use to seek dismissal of the Complaint, it is clear that the statements attributed to them is not "lawful … speech that is genuinely aimed in whole or in part at procuring government activity." The speech "constitutes a tort" that is outside the protections in the Minnesota anti-SLAPP statute. Minn. Stat. § 554.03.

The Minnesota anti-SLAPP statute immunizes from liability "[l]awful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action . . . unless the conduct or speech constitutes a tort or a violation of a person's constitutional rights." Minn. Stat. 554.03. Under the statute, speech or conduct falling within that description is public participation. Minn. Stat. 554.01. But it is clear that the statute does not provide immunity to statements "intentionally aimed at audiences *having no connection with the public . . . controversy.*" *Freeman v. Swift*, 776 N.W.2d 485 (Minn. Ct. App. 2009) (emphasis added).

Minnesota's anti-SLAPP law allows a defendant who is the subject of a claim that "materially relates to an act . . . that involves public participation" to file a motion to dismiss or strike the complaint. Minn. Stat. 554.02. Discovery activities are placed on hold from the time the motion is filed until not only the trial court has ruled on it but until all appeals regarding it have been resolved.

7

None of the statements attributed to the Defendants in the Complaint, irrespective of whether they are named, can be construed as speech to procure a favorable outcome. As set forth in the Complaint, the statements, virtually always anonymous, are clearly and expressly designed to cause harm to Plaintiffs as a consequence of enforcing copyrights. Among other things, Plaintiff has alleged that Defendants' statements include those that, among other things, accuse state that Plaintiff and other representatives of a law firm , were engaged in a "scam" and "criminality;" being "crooks;" engaging in "blackmail" and an "extortion scheme;" being "crooked;" engaging in "criminal acts;" and being "seasoned fraudsters." A defendant declared that Prenda's attorneys were "like Dahmer and Bundy," two mass murders. Compl. at ¶102.

The comments attributed to Defendants, and incorporated by reference into the Complaint, indicate that some or all of Defendants have stated an intention to pseudonyms, emboldened by association others apparently sharing the same afflictions, Defendants have continued unabated in their conduct, falsely accusing Plaintiff of many things with the stated intention of harming its business, harming his relationships with clients, and harming the public reputation of anyone performing work with the Plaintiff. Compl. at ¶2, *see generally* ¶¶ 29-99.

The statements attributed to Defendants in the complaint bear no relationship, whatsoever, with any attempt to procure a favorable government result. They are what Defendants admit they are: efforts to defame and harm Plaintiff financially and professionally. There is no immunity from such statements under the Minnesota or any other State's anti-SLAPP statute.

### III. FEDERAL CASE LAW INCREASINGLY OPPOSED TO ANTI-SLAPP MOTINS.

Defendants' motion also fails to point out the trend among Federal jurisdictions against application of State anti-SLAPP statutes to matters pending in Federal Courts.

In a February 2, 2012 Memorandum Opinion, a U.S. District Court for the District of Columbia squarely rejected application of a local anti-SLAPP statute in a federal proceeding. *3M Company v. Boulter,* Case No. 11-cv-1526 (U.S. District Court, District of Columbia). The court, holding that an anti-SLAPP statute enacted in the District of Columbia was a procedural matter covering the same ground as Federal Rules of Civil Procedure 12 and 56, specifically held that:

> Simply put, the Act allows a defendant on a preliminary basis to deal a deathly blow to a plaintiff's claim on the merits based either on the pleadings or on matters outside the pleadings. There is no question that the special motion to dismiss under the Anti-SLAPP Act operates greatly to a defendant's benefit by altering the procedure otherwise set forth in Rules 12 and 56 for determining a challenge to the merits of a plaintiff's claim and by setting a higher standard upon the plaintiff to avoid dismissal. Indeed, that is the *precise reason* that the District enacted the statute and why Defendants so vigorously seek its protections. Upon careful examination of the Act's special motion to dismiss procedure, this Court holds that it squarely attempts to answer the same question that Rules 12 and 56 cover and, therefore, cannot be applied in a federal court sitting in diversity.

*3M,* ECF No. 61 at p. 24.

Under the decision in *3M,* the anti-SLAPP statutes are inapplicable in federal courts under the doctrine set forth in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). The court, among other things, held that Federal Rules of Civil Procedure 12 and 56 cover motions in federal court. Because anti-SLAPP statute covers the same ground as those rules (for example, allowing a defendant to attach papers to a motion, staying discovery and requiring dismissal if a plaintiff does not hold a likelihood of success on the merits), the court held that the anti-SLAPP statute could not apply in a federal court proceeding. The court also held that, aside from the

*Erie* doctrine analysis, an anti-SLAPP motion is impermissible in a federal court because it purports to require dismissal with prejudice, which "is a direct conflict with the Federal Rules, which do *not* mandate dismissal with prejudice in every circumstance, and which in fact vest a district court with discretion to determine whether a dismissal under Rule 12(b) would operate as an adjudication on the merits." (Emphasis in original).

The Seventh Circuit has not addressed the decision in *3M,* which is currently being appealed. While three federal circuits have held that anti-SLAPP laws apply in federal court (*see United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963 (9th Cir. 1999); *Henry v. Lake Charles American Press LLC*, 566 F.3d 164 (5th Cir. 2009); *Godin v. Schencks,* 629 F.3d 79, 88 (1st Cir. 2010), the Chief Judge of the Ninth Circuit Court of Appeals recently indicated in a concurring opinion that *Newsham* "was a big mistake [and] [t]wo other circuits have foolishly followed it." *Makaeff v. Trump University, LLC*, Cas. No. 11-55016, (Ninth Circuit Court of Appeals Apr. 17, 2013,concurring opinion).

Plaintiff requests that the Court therefore rule that the no anti-SLAPP statute operates to bar Plaintiff's claim, because it is a procedural rule that is, as set forth in *3M,* barred under the *Erie* doctrine for a federal court in a diversity case.

IV. **THE COURT SHOULD DENY THE MOTION.**

For all of the foregoing reasons, the Court should deny the Motion. In the event that it does not, however, the Court should allow Plaintiffs the opportunity "to engage in limited discovery on, at the least, whether" Defendants' are protected, "and specifically whether there is clear and convincing evidence that the statements were not genuinely aimed at "not the Court

would not dismiss the state law claims at procuring government action." in *Doctor's Data, Inc. v. Barrett*, No. 10-cv-03795, 2011 U.S. Dist. LEXIS 134921 (N.D. Ill. Nov. 22, 2011) at *8.

## CONCLUSION

For the reasons stated in the Motion, the Court should deny the Motion, and grant Plaintiff any and other relief that it deems to be reasonable and appropriate under the circumstances.

        Respectfully submitted,

        PRENDA LAW INC,
        ALPHA LAW INC.

        By: /s/ Paul A. Duffy
            One of Its Attorneys

Paul A. Duffy
2 N. LaSalle St., Suite 1300
Chicago, IL  60602
Telephone:  (312) 952-6136
Fax:  (312) 346-8434
E-mail:  pduffy@pduffygroup.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 20, 2013, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system, in compliance with Local Rule 5.2(a).

        /s/ Paul Duffy
        Paul Duffy

11